560 So.2d 1223 (1990)
FREMONT INDEMNITY COMPANY, Appellant,
v.
Charles GIERHART, David L. Fields and Gierhart & Fields, P.A., Appellees.
No. 89-02003.
District Court of Appeal of Florida, Second District.
March 28, 1990.
Rehearing Denied May 9, 1990.
*1224 Joseph H. Lowe of Marlow, Shofi, Connell, Valerius, Abrams, Lowe & Adler, Miami, for appellant.
James H. Burgess, Jr., and Thomas F. Capshew of Syprett, Meshad, Resnick & Lieb, P.A., Sarasota, for appellees.
SCHEB, Acting Chief Judge.
Appellant, Fremont Indemnity Company, contends the trial court erred in awarding a final summary judgment holding that coverage existed for its insured, appellees, Charles Gierhart, David L. Fields and Gierhart & Fields, P.A. (collectively Gierhart & Fields), an accounting firm, under a "claims-made" professional liability policy. We reverse.
In 1988, White Sands of Longboat, Inc., sued Southeast Bank, N.A., and Gierhart & Fields for negligent failure to supervise. There was no dispute as to the operative facts. Gierhart & Fields serviced some 400 mortgages for White Sands. White Sands alleged that Marilyn Travis, an employee of Gierhart & Fields, fraudulently converted monies of White Sands to her own use by writing personal checks on her personal account and cashing them at Southeast Bank, where White Sands' funds were deposited. Travis allegedly referenced the White Sands' account for identification and when her checks were returned for insufficient funds, the bank debited the White Sands' account. Travis allegedly then covered the withdrawals and resulting discrepancies by making false entries to the numerous mortgage accounts. The scheme was discovered in 1987.
The policy issued by Fremont provided that only claims made during the policy period, November 15, 1984 through November 15, 1985, were covered. The declarations page of the policy stated:
NOTICE: This is a CLAIMS-MADE POLICY. Except to such extent as may be provided otherwise herein, this insurance is limited to liability for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD.
Further, section III under the insuring agreements of the policy stipulated:
III. TERRITORY AND CLAIMS-MADE PROVISIONS:
This Policy applies to acts, errors, omissions or personal injuries ... provided that claim is made and suit is brought against the insured ...:
A) during the Policy period and then only if claim is first made during the Policy period... .
Gierhart & Fields only became aware of the conversions after the expiration of the policy. Thus, they did not notify Fremont of a claim or potential claim within the policy period. Gierhart & Fields first notified Fremont of the claim when the White Sands' suit was filed in 1988.
Both parties moved for summary judgment. Gierhart & Fields contended that Section VIII of the policy modified Section III. Section VIII provided:
VIII. WAIVER OF EXCLUSIONS AND BREACH OF CONDITIONS:
Whenever coverage under any provision of this Policy would be excluded, suspended or lost:

*1225 A) because of any exclusion or condition relating to dishonest, fraudulent, malicious or criminal acts or omissions by an Insured or employee of an Insured and with respect to which any other Insured did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, or
B) because of noncompliance with any condition relating to the giving of notice to the Company with respect to which any other Insured shall be in default solely because of the default or concealment of such default by one or more partners or employees responsible for the loss or damage otherwise insured hereunder,
the Company agrees that such insurance as would otherwise be afforded ... shall continue in effect, cover and be paid with respect to each and every Insured who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts or omissions described in any such exclusion or condition; provided that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of this Waiver of Exclusions and Breach of Conditions shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured or employee to comply therewith.
Fremont argued that the language of Section VIII only applied to the exclusion and conditions sections which followed and not to section III and the other general provisions found within the insuring agreements section. The trial court, without explanation, denied Fremont's motion for summary judgment, and granted final summary judgment in favor of Gierhart & Fields. This appeal by Fremont ensued.
First, we address the issue of whether the policy issued by Fremont was a claims-made or occurrence policy. Under a claims-made policy, coverage is effective "if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term... ." "[T]he essence, then, of a claims made policy is notice to the carrier within the policy period." Gulf Ins. v. Dolan, Fertig & Curtis, 433 So.2d 512, 514 (Fla. 1983). On the other hand, an occurrence policy offers coverage where "the negligent act or omission occurs within the policy period, regardless of the date of discovery or the date the claim is made or asserted." Id.
The policy issued by Fremont stated in bold print on the declarations page that it was a claims-made policy. The first page of the insuring agreements stated "ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE (Claims-Made Basis)." Section III of the insuring agreement provided that the policy only applied to acts, errors or omissions brought against the insured during the policy period. Consequently, we reject Gierhart & Fields' contention that the provisions of this policy converted it into an occurrence policy and find that the policy issued by Fremont was a claims-made policy.
Next, we address the primary issue of whether the trial court erred in granting final summary judgment for Gierhart & Fields. We agree that this case was appropriate for consideration on a motion for summary judgment because there was no factual dispute; therefore, the issue before the court became a question of law. We disagree, however, with the trial court's grant of Gierhart & Fields' motion for summary judgment.
Although Section VIII does begin by stating "[w]henever coverage under any provision of this policy would be excluded, suspended or lost," it goes on to state "A) because of any exclusion or condition relating to ... or, B) because of non-compliance with any condition relating... ." (Emphasis Added). Consequently, section VIII only applies to certain exclusions and conditions and cannot be construed as a waiver of the basic insuring agreements of the policy. To allow the Fremont policy to be extended by judicial interpretation beyond the period of stated coverage would amount to a gratuitous extension of policy *1226 benefits. This we cannot approve. Gulf Ins.
The purpose of Section VIII(A) was to provide coverage, which would otherwise be excluded, for intentional, dishonest acts or omissions committed by some other insured where the act was committed without the participation, knowledge or acquiescence of the insured claimant. This is designed to protect innocent partners from actions of dishonest partners and employees. Section VIII(B) protects innocent insureds when dishonest insureds or employees fail to notify the carrier when a claim has been made or suit has been filed. Here, Section VIII(A) and (B) would have provided coverage to Gierhart & Fields had White Sands notified it of the claim or filed suit during the policy period. However, that was not the case here as the acts giving rise to Gierhart & Fields' claims were not discovered prior to the expiration of the policy on November 15, 1985.[*]
Accordingly, we vacate the summary judgment for appellee and direct the trial court to enter summary judgment in favor of appellant, Fremont Indemnity Company.
FRANK and THREADGILL, JJ., concur.
NOTES
[*] We note that the policy issued by Fremont stipulated that for an additional premium, Gierhart & Fields could have obtained an unlimited extended discovery period. Such an election would have provided coverage for claims which arose out of facts which took place prior to the end of the policy period. Gierhart & Fields did not elect to obtain this coverage.